## Noe, et al. v. Saylor, et al.

(Decided April 20, 1911.)

### Appeal from Harlan Circuit Court.

Lands—Option for Sale of—Subsequent Sale of Mineral Rights—

Evidence.—In an action to compel the conveyance of land, the evidence examined and held that the writing sued on was not a bond but an option for the sale of the land and that as no steps were taken by the plaintiffs to avail themselves of their rights under it until long after it had expired, H. and others who subsequently purchased the mineral rights acquired a good title to them.

W. F. HALL for appellants.

METCALF & JEFFRIES for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

On November 28, 1905, Mack Saylor and his wife Susan, who owned a tract of land in Harlan County, Kentucky, executed and delivered to J. B. Noe, T. N. Noe and S. W. Saylor the following writing:

''KNOW ALL MEN BY THESE PRESENTS, That we, M. C. Saylor and Susan Saylor, his wife, of the County of Harlan and State of Kentucky, parties of the first part, hath this day bargained and sold unto T. N. Noe, J. B. Noe and S. W. Saylor, of the same county and State aforesaid, parties of the second part,

''WITNESSETH: That parties of the first part for and in consideration of the sum of Five Dollars per acre for which one dollar in hand paid, the remainders to be paid within thirty days from this date, the following described property to-wit:

"A certain tract or parcel of land lying and being in Harlan County, on Spice-wood Branch of Forester's Creek, supposed to be 200 acres, and bounded as follows: 'On the East by the lands of Simeon Saylor's land; on the South by the lands of Z. R. Brock & John H. Brock; on the West by the lands of Jones Co., & Craig Saylor.' Said parties of the first part bind themselves, their heirs and assigns to make unto said parties of the second part a deed of warranty to said above described property, at any time within thirty days, or as soon as practicable thereafter, parties of the second part paying the remainders of five dollars per acre per contract.

"This the 28th day of November, 1905.

his<br>
"M. C.—X—Saylor,<br>
mark<br>
her<br>
"Susan—X—Saylor,<br>
mark.''

No steps were taken to carry out the provisions of this agreement for some months, and on September 17, 1906, they sold the land to Calvin Hurst and J. M. Blanton as trustees for themselves and John L. Saylor and D. C. Burchfield, and executed to them a title bond for same. By the terms of this sale they were to receive ten dollars per acre for the land. A portion of the purchase price was paid at the time the title bond was delivered. Thereafter the land was surveyed and the boundary and acreage ascertained with accuracy. But before the deed was made, a new trade was entered into between the parties by which, instead of purchasing the fee in the land, they bought the mineral, oil, etc., rights thereon for five dollars per acre. A deed was prepared in accordance with the terms of the trade, and a portion of the purchase money paid, the deed reciting that the remainder was to be paid thereafter. Before the survey and deed had been made, J. B. Noe and his associates, to whom the writing of November 28, 1905, had been executed, brought suit in equity to compel Mack Saylor and his wife to convey the land to them. To this suit Saylor and his wife answered, and pleaded in substance that they had been induced by fraudulent representations to execute the writing, which they understood to be merely a thirty-day option, that this option had long since expired, and that they had sold the land to Hurst and his associates. Plaintiff joined issue with the defendants on the question of fraud and the construction

and effect to be given the writing. Hurst and his associate filed their petition to be made parties, set up their ownership of the land, and asked that their deed thereto be upheld. Some months thereafter plaintiffs filed their reply to the answer of Hurst *et al.*, and, in addition to traversing the material allegations thereof, pleaded affirmatively that the defendants, Mack Saylor and his wife had abandoned their defense, and by direction of plaintiffs had conveyed their land to J. G. Muncy. Following this, Muncy filed his petition to be made a party, and asked that he be adjudged the owner of the land. Issue was joined by all the parties as to ownership and the case prepared for trial. Upon submission the Chancellor was of opinion that the paper held by plaintiffs, dated November 28, 1905, was merely an option, which had expired before being exercised, and no rights passed thereby. He accordingly held the deed of Hurst *et al.* good, and dismissed the petition of plaintiffs and of Muncy. Being dissatisfied with this finding and judgment, they appeal.

The rights of the respective parties to this litigation turn upon a proper construction of the writing of November 28, 1905. If, as contended for by appellants, it is a bond for a deed, it was a binding obligation upon Mack Saylor and his wife at the time they conveyed the land to Hurst, etc., in 1906; but if it was intended merely as an option—a right given to Noe and his associates to buy at their option at any time within thirty days, it had expired before the sale to Hurst, etc., took place, and no cause of action is supported by it. Considered by itself the writing possesses all the essential elements of a bond, and would be held to be such in the absence of the allegation, supported by proof, that it was not so intended.

From the shifting and diametrically opposed positions which the defendant Mack Saylor has taken in this case, but little credence can be given his statements. In his answer he swears that the writing was obtained by fraud and was intended as an option. In his deposition, given nearly three years later, and when the Noes had arranged to pay him $10 per acre instead of $5, as provided in the writing, he says he understood the contract and that it was in fact a title bond, and that he was in no wise imposed upon in its execution. His conduct perhaps furnishes a better guide to the real facts than his statements. Between November 28, 1905, and September 17, 1906, when he sold to Hurst and his associates, Mack Saylor told many of his friends and acquaintances that

the writing was only an option and had expired, and that he had been deceived in its execution. When these statements were made by him he was wanting to sell the land to others. He evidently did not regard the writing as of any binding force. He so told Hurst and his associates, and on the strength of his statements, which were generally understood in that neighborhood at that time to be true, Hurst and his associates bought the land and made a substantial payment on it. When Noe and his associates heard of this transaction they tried to induce Mack Saylor to let them have the land and offered to pay as much as anyone else for it. Their conduct in thus making this offer rather supports the claim that the writing which they held was merely an option. They had paid nothing on the land over and above the one dollar, the nominal consideration stated, if that was paid, and had permitted about ten months to run without making any effort whatever to carry out the contract.

It is certainly not reasonable that this ignorant old man intended to sell his land at $5 an acre and postpone indefinitely the time when the purchase money should be paid. Such conduct is not in accord with human experience, and is contrary to the usual, reasonable and natural way in which business transactions of this character are conducted. When Mack Saylor reported or represented in his general talk about the neighborhood, where all of the parties lived, that the writing was an option and had expired, while it is possible, it is not at all probable, that Noe and his associates were not advised as to what Saylor was saying of the writing. Upon no other hypothesis can their inaction be accounted for. If they regarded the writing as binding, why did they not earlier seek to enforce their rights? Why wait until the land had been sold to others before making an effort to have it conveyed to them? Their delay is not satisfactorily accounted for upon any other hypothesis than that they fully knew and understood that Mack Saylor was claiming that it was only an option, which had been procured by fraud, and which had expired.

Considering all of the evidence, we are constrained to hold that the writing in question was intended, not as a bond, but an option for the sale of the land, and that as no steps were taken by Noe and his associates to avail themselves of their rights thereunder until long after it had expired, the Chancellor correctly held that Hurst and

his associates, by their purchase, acquired a good title to the coal, mineral, etc., rights, as set up in their deed.

Judgment affirmed.